```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MASSACHUSETTS

JAMES A. HALEY,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )
                                         )
CITY OF BOSTON, Former Boston Police     )
Sergeant Detective JOSEPH KELLEY, and    )
Former Boston Detective JOHN B.          )
HARRINGTON, as well as-yet UNKNOWN       )
EMPLOYEES of the CITY OF BOSTON,         )
                                         )
            Defendants.                  )   JURY TRIAL DEMANDED
```

**<u>COMPLAINT</u>**

NOW COMES Plaintiff, JAMES A. HALEY, by his attorneys, LOEVY & LOEVY, and complaining of the CITY OF BOSTON, Former Boston Police Sergeant Detective JOSEPH KELLEY, and former Boston Detective JOHN B. HARRINGTON, as well as other as-yet UNKNOWN EMPLOYEES OF THE CITY OF BOSTON (collectively, "Defendant Officers"), alleges as follows:

**Introduction**

1. Plaintiff James A. Haley spent 34 years in prison for a murder he did not commit. Arrested in 1971 at age 24, Mr. Haley was wrongfully convicted and sentenced to life.

2. Never losing faith that the truth would prevail, Mr. Haley has continued to assert his innocence for more than three decades. Through the persistence of his own investigation, Mr. Haley eventually obtained proof that exculpatory evidence in the possession of the Boston Police Department had been withheld from his defense at his original trial, evidence which helped to establish his innocence.

3. Confronted with this fundamental violation of Mr. Haley's right to due process, the Commonwealth of Massachusetts successfully moved to vacate Mr. Haley's conviction. When that motion was granted last year, the Commonwealth declined to re-prosecute him.

4. Although Plaintiff has finally obtained his freedom, he will never regain the lost decades of his life, decades taken from him as a result of misconduct by the Defendant Officers. This lawsuit seeks redress for those injuries.

## Jurisdiction and Venue

5. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. Venue is proper under 28 U.S.C. § 1391(b). The Plaintiff resides in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

## The Parties

7. At all times relevant hereto, Plaintiff James A. Haley was a resident of the City of Boston. At the time of the arrest giving rise to this action, Mr. Haley was living in Boston, and was employed as a drafts person at the Massachusetts Institute of Technology.

8. Defendant Joseph Kelley was formerly employed as a Sergeant Detective with the Boston Police Department.

9. Defendant John B. Harrington was formerly employed as a Detective with the Boston Police Department.

10. Each of the foregoing Defendants are sued in their individual capacities, and all acted under color of law and in the scope of their employment in engaging in the actions alleged in this Complaint.

11. Defendant City of Boston is a municipal entity which employs or employed the Defendant Officers, including the as-yet unknown Defendants.

### Background Allegations

12. In March of 1970, Mr. Haley married a woman named Brenda Haley (hereafter, "Brenda"). Through Brenda, Mr. Haley became acquainted with Brenda's sister, Gloria Custis ("Gloria"), as well as Gloria's boyfriend, David Myers.

13. By 1971, Mr. Haley and Brenda were estranged. In early May of 1971, Brenda left Massachusetts to live with her mother in Delaware.

### The Murder

14. Sometime in the morning of July 11, 1971, someone stabbed and shot David Myers to death in the Roxbury apartment he shared with Gloria and an infant child.

15. Around the time of Myers' murder, he and Gloria had been arguing often about a variety of subjects, including Gloria's purported unfaithfulness and the fact that Myers had struck her in the months before his death.

### The Evidence

16. Mr. Haley had no involvement whatsoever in the Myers murder. He is totally innocent.

17.     There was never any physical evidence tying Mr. Haley to this crime.  None of his fingerprints or DNA were ever found at the crime scene, nor was any incriminating evidence of any kind ever discovered in his possession.

18.     The only evidence ever tying Mr. Haley to this crime was the testimony of Gloria, and, to a lesser extent, Brenda.

19.     Gloria and Brenda claimed that they had seen Mr. Haley on the street on the day before the murder, whereupon Mr. Haley purportedly learned that his estranged-wife had returned to Boston.

20.     According to the Commonwealth's theory of the case, in the early morning hours following this purported chance encounter the day before, Mr. Haley proceeded to break into Gloria's apartment looking for Brenda; upon being confronted by Myers, Mr. Haley supposedly struggled with and then killed him.

21.     The alleged actions described in the preceding paragraph did not occur.  For one thing, Myers was twice as big as Mr. Haley (roughly 250 pounds to Mr. Haley's 140 pounds) and Mr. Haley would not have, and did not ever, attempt to overpower him in the manner alleged.

22.     Additionally, Mr. Haley had an alibi for both the night of the crime and the purported encounter with Brenda and Gloria on the street the day prior to the murder.  Specifically, he had attended a party with a number of witnesses during the time period that the murder occurred, and he was at work during the time that the sisters supposedly ran into him the day before.

**Mr. Haley's Wrongful Conviction**

23.  Mr. Haley was tried for Myers' murder in late-February of 1971.  On the basis of the testimony of Gloria and Brenda, Mr. Haley was convicted of murder in the first degree.  The jury declined to recommend imposition of the death penalty, but Mr. Haley was sentenced to natural life in prison.

**The Withheld Evidence**

24.  In 2005, Mr. Haley learned from another inmate about the Massachusetts Public Records Act ("MPRA"), and he made a request to the Boston Police Department for all of the documents relating to his case.

25.  Within the package of documents Mr. Haley subsequently received in February of 2006 from the Boston Police Department in response, Mr. Haley discovered two separate typed witness interview statements.  The typed transcripts, which had been redacted, reflect that the statements were taken by Defendant Kelley, in the presence of Defendant Harrington, memorializing witness interviews with each of Brenda and Gloria on July 11, 1971, the day of the murder (hereafter, the "Police Interview Statements").

26.  The Police Interview Statements are exculpatory.  In particular, they contradict the trial testimony of both Gloria and Brenda in a very material respect, to wit, when interviewed on the day of the murder, each woman was asked when was the last time she had seen Mr. Haley, and each responded that it was "last month," or words to that effect.  Neither woman mentioned

5

anything about supposedly having seen Mr. Haley the day before the murder as they later claimed at trial.

27. As stated, there has never been any evidence connecting Mr. Haley to this crime other than the testimony of Gloria and Brenda to the effect that Mr. Haley supposedly broke into Gloria's apartment and killed Myers the day after allegedly seeing that Brenda had returned to Boston.

28. The allegation that Mr. Haley had supposedly seen Brenda and Gloria the day before the murder was thus an important premise in the Commonwealth's case. In his opening statement, throughout the examination of witnesses, and his closing argument, the prosecutor repeatedly emphasized it as the linchpin to Mr. Haley's motive to have come looking for his ex-wife at Gloria's apartment early the following morning. Because Mr. Haley would not have otherwise had reason to know that his wife had returned from Delaware, this purported encounter was a very important piece of the evidence presented against Mr. Haley at his trial.

29. For the reasons stated in the preceding paragraphs, the admissions in the Police Interview Statements would have been critical to Mr. Haley's defense of the criminal charges.

### Constitutional Violations

30. On December 30, 1971, prior to Mr. Haley's criminal trial, his counsel filed a motion requesting to be "furnished with evidence favorable to the accused," seeking, *inter alia,* any evidence that could impeach the Commonwealth's

witnesses, any inconsistent statements made to law enforcement officers, and any prior inconsistent statements of any trial witnesses.  The motion was allowed by the trial court on January 31, 1972.

31.  Neither of the Police Interview Statements were provided to Mr. Haley or his criminal defense counsel in response to his counsel's motion, nor at any time prior to the response to Mr. Haley's MPRA request in 2006.

32.  Had Mr. Haley been provided the Police Interview Statements at the time of his original trial, he would never have been convicted.

33.  At all times relevant hereto, it was and is the policy of the attorneys in the District Attorney's Office to disclose all exculpatory evidence of which they were aware.

34.  Neither of the Police Interview Statements were provided by any member of the Boston Police Department to any member of the District Attorney's Office.

**Mr. Haley's Exoneration**

35.  After Mr. Haley uncovered the Police Interview Statements and presented them via motion to the court in connection with his motion for new trial, the District Attorney offered to assent to the new trial motion if Mr. Haley would agree to plead guilty to the crime of manslaughter, resulting in his immediate release from prison for time served.

36.  Even though Mr. Haley had by then spent 34 years in prison, and even though there were no guarantees that he would in fact win his release, Mr. Haley refused the offer.  The reason

why Mr. Haley refused to plead guilty even though it would have enabled his immediate release from prison was because he did not commit the crime.

37. Thereafter, the Commonwealth of Massachusetts filed a motion to vacate Mr. Haley's conviction on the basis of the Brady violation described above. The Commonwealth's motion acknowledged that Mr. Haley "did not receive a fair trial" because his constitutional rights were violated when he was "deprived of certain exculpatory evidence at trial."

38. On August 26, 2008, on Mr. Haley's subsequent motion, the trial court entered an order dismissing the murder indictment, albeit without prejudice.

### Plaintiff's Injuries

39. On information and belief, 34 years of wrongful incarceration is one the longest ever served in the history of Massachusetts, if not the entire United States.

40. In serving more than three decades behind bars, Plaintiff was wrongfully deprived of virtually his entire adult life to date. Plaintiff must now attempt to make a life for himself outside of prison without the benefit of the decades of life experiences which ordinarily equip adults for that task.

41. Additionally, the emotional pain and suffering caused by losing 34 years in the prime of life has been substantial. During his wrongful incarceration, Plaintiff was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share

holidays, births, funerals, and other life events with loved ones, the opportunity to fall in love and marry and to pursue a career, and the fundamental freedom to live one's life as an autonomous human being.

42. As a result of the foregoing, Plaintiff has suffered tremendous damage, including physical suffering, all proximately caused by Defendants' misconduct.

## Count I -- 42 U.S.C. § 1983

### Due Process

43. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

44. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

45. In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff.  Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

46. The Defendant Officers' misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

47. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

48. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

49. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Boston in that Boston police officers regularly failed to disclose exculpatory evidence to criminal defendants, and otherwise violated due process in the manner alleged above. The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Boston Police Department, were able to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

50. Furthermore, the widespread practices described in the preceding paragraphs were permitted to flourish because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

### Count II -- 42 U.S.C. § 1983

### False Arrest and Malicious Prosecution

51. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

52. Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no

legitimate probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

53. The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

54. Statements of the Defendant Officers regarding Plaintiff's alleged culpability were made with knowledge that said statements were false and perjured. In so doing, the Defendants fabricated evidence and withheld exculpatory information.

55. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

56. The misconduct described in this Count was undertaken pursuant to the City's policy and practice in the manner more fully described above.

57. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

### Count III -- 42 U.S.C. § 1983
### Supervisory Liability

58. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

59. The constitutional injuries complained-of herein were proximately caused by a pattern and practice of misconduct which occurred with the knowledge and consent of those of the Defendant Officers who acted in a supervisory capacity, such that these officers personally knew about, facilitated, approved, and condoned this pattern and practice of misconduct, or else affirmatively turned a blind eye thereto without taking any steps to stop it.

60. In this way, these Defendants are personally responsible for the complained-of injuries because they knowingly, willfully, or at least recklessly caused the alleged deprivation by their actions or by their deliberately indifferent failure to act.

61. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

62. The misconduct described in this Count was undertaken pursuant to the City's policy and practice in the manner more fully described above.

63. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

### Count IV -- 42 U.S.C. § 1983

### Failure to Intervene

64. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

65. In the manner described above, during the constitutional violations described above, one or more of the Defendants (and other as-yet-unknown Boston Police Officers) stood by without intervening to prevent the misconduct.

66. As a result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress.  These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

67. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

68. The misconduct described in this Count was undertaken pursuant to the City's policy and practice in the manner more fully described above.

69. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

### Count V -- 42 U.S.C. § 1983

### Conspiracy to Deprive Constitutional Rights

70. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

71. After the Myers murder, the Defendants reached an agreement amongst themselves to frame Plaintiff for the crime, and to thereby deprive Plaintiff of his constitutional rights, all as described in the various Paragraphs of this Complaint.

72. Independently, before and after Plaintiff's convictions, each of the Defendants further conspired, and continue to conspire, to deprive Plaintiff of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

73. In this manner, the Defendant Officers, acting in concert with other unknown co-conspirators, including persons who are not members of the Boston Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

74. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

75. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

76. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

### Count VI -- State Law Claim

### Malicious Prosecution

77. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

78. Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no

legitimate probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

79. The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

80. Statements of the Defendant Officers regarding Plaintiff's alleged culpability were made with knowledge that said statements were false and perjured. In so doing, the Defendants fabricated evidence and withheld exculpatory information.

81. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

82. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

### Count VII -- State Law Claim
### Negligent Investigation

83. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

84. Each of the Defendant Officers owed Plaintiff a duty of care, and breached that duty by failing to investigate properly the crime for which Plaintiff was convicted.

85. For example, the Defendant Officers ignored evidence that pointed at other suspects, and failed to memorialize and/or disclose evidence which would have been exculpatory to Plaintiff.

86. As a direct and proximate result of the Defendants' breach of the duty described in the preceding paragraphs, Plaintiff was arrested, prosecuted, convicted, and imprisoned for a crime he did not commit, resulting in injuries.

87. The misconduct described in this Count was undertaken with reckless indifference to the rights of others.

### Count VIII -- State Law Claim
### Negligent Training and Supervision

88. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

89. Defendant City of Boston had a duty to Plaintiff to train and supervise its police officers in proper law enforcement methods and techniques.

90. The City of Boston breached that duty by failing to train and supervise its police officers adequately with regard to the proper investigation of crimes, including the proper disclosure of exculpatory information.

91. As a direct and proximate result of the City of Boston's breach of the duty described in the preceding paragraphs, Plaintiff was arrested, prosecuted, convicted, and imprisoned for a crime he did not commit, resulting in injuries.

### Count IX -- State Law Claim

### Civil Conspiracy

92.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

93.  As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

94.  In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

95.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

96.  As a proximate result of Defendants' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

### Count X -- State Law Claim

### Respondeat Superior

97.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

98.  In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Boston Police Department acting at all relevant times within the scope of employment and under color of law.

99.  Defendant City of Boston is liable as principal for all torts committed by its agents.

**JURY DEMAND**

Plaintiff, JAMES A. HALEY, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:


         /s/ Jon Loevy
       Attorneys for Plaintiff


Arthur Loevy
Jon Loevy
Mike Kanovitz
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900