UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10197-RGS

JAMES A. HALEY

v.

CITY OF BOSTON,
JOSEPH KELLEY,
JOHN B. HARRINGTON,
and UNKNOWN EMPLOYEES OF THE CITY OF BOSTON

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION TO AMEND OR ALTER JUDGMENT AND
FOR LEAVE TO FILE AN AMENDED COMPLAINT

August 12, 2010

STEARNS, D.J.

James A. Haley, who served thirty-four years in state prison for the murder of David Myers, was released from custody when, after a public records request, he received a copy of a police report that had not been produced at or prior to his trial. Haley brought this action under the Federal Civil Rights Act, 42 U.S.C. § 1983, against Joseph Kelley and John Harrington, former Boston Police officers who headed the investigation that led to Haley's arrest.[1] He additionally brought several state law claims against the City of Boston and unnamed police superior officers.[2] On December 31, 2009, the court issued a

---

[1] Kelley, now retired, was a sergeant detective. Harrington, a former detective, died three months prior to Haley's trial.

[2] Haley asserted state law claims of malicious prosecution, negligent investigation, negligent training and supervision, and civil conspiracy. Haley additionally asserted a claim of respondeat superior, but as the court noted, "[respondeat superior] is not a freestanding cause of action. [Count X] simply recites (in a not fully accurate fashion) the principle of tort law that an employer like the City of Boston is 'liable as [a] principal for all torts committed by its agents.' Compl. ¶ 99." Mem. and Order of December 31, 2009 at 17, n.19.

Memorandum and Order dismissing Haley's Complaint with prejudice. Judgment was entered for defendants on the same day. On January 27, 2010, Haley filed a motion to amend or alter the judgment, and for leave to file an Amended Complaint.

BACKGROUND

A full recital of the facts alleged in the underlying Complaint can be found in the court's Memorandum and Order of December 31, 2009. For present purposes the following brief summary, taken from the Massachusetts Supreme Judicial Court's recital, will suffice. In March of 1971, Haley and his wife, Brenda, lived with Brenda's sister, Gloria Custis, and her boyfriend, the victim David Myers, in their Dorchester apartment. In May of 1971, Haley struck and threatened Brenda, who left for her parents' home in Delaware. When Brenda returned to Boston in June of 1971, Haley was nowhere to be found. On July 9, 1971, during Brenda's return visit to Boston, she spoke with Haley by telephone. The following day, as Brenda and Gloria were en route to Gloria's apartment, they saw Haley some thirty-five feet away, but did not speak to him.

On the early morning of July 11, 1971, Gloria awoke to find a bleeding Myers, who told her that Haley had stabbed him. Gloria then heard a gunshot and Myers saying, "Why did you stab me, man? Brenda's not here." Gloria then looked into the bathroom and saw Myers and Haley struggling. Haley had both a gun and a knife. After leaving to seek help, Gloria returned to the apartment, where Myers was lying on the floor. Myers died of a bullet wound to the head. He had also been stabbed. The defense at trial was alibi. Haley's sister testified that she had seen him at a party at about the time the murder took place. See Commonwealth v. Haley, 363 Mass. 513, 514-516 (1973). The jury convicted Haley of first-degree murder and he was sentenced to life without parole.

On February 14, 2006, the Boston Police Department produced sixty pages of investigative records to Haley in response to a public records request. The documents included transcribed, but redacted, statements given to Kelley in the presence of Harrington by Gloria and Brenda on the day of the murder. Brenda had earlier told police that the last time that she had seen Haley was the month previous, when she had encountered him walking down the street. Gloria similarly told the police that she had last seen Haley a month before Myers was killed. Neither Brenda nor Gloria indicated in their statements that they had seen Haley on July 10, 1971, the day before the murder, as they testified at trial.

In reviewing the motion to dismiss brought on behalf of the defendant officers, the court ruled that even assuming that a constitutional violation had occurred, Kelley and Harrington were entitled to qualified immunity. See Mem. and Order of December 31, 2009 at 16. The court additionally ruled that "[a]lthough qualified immunity requires dismissal of the claims against Harrington and Kelley, this does not dispose of the claims against the City of Boston." Id. The court, however, dismissed Haley's state-law claims against the City as a result of his failure to make the timely presentment required by Mass. Gen. Laws ch. 258, § 4. See id. at 19. The court did not address the viability of Haley's claim against the City under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

## DISCUSSION

Haley takes exception to two of the court's rulings. First, Haley argues that his Monell claim survives the court's qualified immunity analysis, as municipalities are not entitled to immunity from damages. Second, Haley argues that the court erred in dismissing his state-law claims with prejudice because the statute of limitations has not run. He contends that he should be given the opportunity to cure his failure to make a proper

3

presentment to the City of Boston.

### Monell Claim

Although the court noted in passing that the grant of qualified immunity to Kelley and Harrington did not dispose of the claims against the City of Boston, the court did not squarely address Haley's Monell claim. It is true that "municipalities have no immunity from damages liability flowing from their constitutional violations." Owen v. City of Independence, Mo., 445 U.S. 622, 657 (1980); Fletcher v. Town of Clinton, 196 F.3d 41, 55-56 (1st Cir. 1999) (finding that the lower court's "resolution of the officers' request for qualified immunity did not dispose of the Town's motion for summary judgment. . . . [I]t is not impossible for a municipality to be held liable for the actions of lower-level officers who are themselves entitled to qualified immunity."). See also Barrett v. Orange County Human Rights Comm'n, 194 F.3d 341, 350 (2d Cir. 1999) ("[U]nder Monell[,] municipal liability for constitutional injuries may be found to exist even in the absence of individual liability.").

Although the court's failure to address the Monell claim was an oversight, the court now finds that the claim should be DISMISSED. In its December Memorandum and Order, the court stated that

> [h]ere it is evident that the redacted statements attributed to Gloria and Brenda were not exculpatory in the sense of establishing Haley's innocence of the murder. At best, they constituted prior inconsistent statements, which while admissible on the issue of the sisters' credibility, were understood in 1972 to be inadmissible for any substantive purpose. See Commonwealth v. Daye, 393 Mass. 55, 61 (1984); Commonwealth v. Lacy, 371 Mass. 363, 369 (1976). This would have been all the more the case had the sisters on cross-examination denied making the statements or explained them as a misunderstanding on Kelley's part of what they had said.

Mem. and Order of December 31, 2009 at 12-13 (footnote omitted). The court additionally stated that

4

> [t]here is a genuine question as to the materiality (prejudice) resulting to Haley as the result of the nondisclosure of the disputed statements. In [United States v. Bagley, 473 U.S. 667 (1985)], five Justices found a single standard of materiality sufficient to cover all cases of prosecutorial nondisclosure regardless of a defense request or its degree of specificity. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome [of the trial]." Id. at 682. Under Bagley, "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. . . . Bagley's touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434 (1995). Bagley, in other words, is not a "sufficiency of the evidence" test, that is, a defendant "need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict," but rather whether in the overall context of the trial, "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 434-435. The burden under Bagley of showing prejudice is heavy. "[T]here is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler v. Greene, 527 U.S. 263, 281 (1999).

Id. at 13 n. 13.

The question of whether allegedly exculpatory evidence is material is a matter of law for the court to decide. See Bagley, 473 U.S. at 683. Here, the court finds that, for the reasons stated above, and in its Memorandum and Order of December 31, 2009, there is no reasonable probability that the production and use of Brenda's and Gloria's statements in cross-examination at trial would have resulted in a different verdict. It is doubtful that the loss of the opportunity to impeach the sisters on a relatively minor and readily explainable aspect of their testimony would have undermined a reasonable observer's confidence in

5

the ultimate verdict.  At best, one or the other (or both) of the sisters might have admitted being mistaken when interviewed by police (or being confused or misquoted).  In light of Gloria's eyewitness account of the murder and the unconvincing attempt at an alibi defense, there is no reasonable probability of a different outcome at trial.[3]  In the absence of a constitutional violation, there can be no municipal liability.  See Kennedy v. Town of Billerica, – F.3d –, 2010 WL 2740000, at *8 (1st Cir. July 13, 2010).  Therefore, the Monell claims will be DISMISSED.[4]

State-Law Claims

Next, Haley argues that the court erred in dismissing his state law claims with prejudice.  Haley argues that the two-year statute of limitations did not begin to run until August 26, 2008, when all charges against him were dropped.  Therefore, Haley believes that he is entitled to make a proper presentment to the City on or before August 26, 2010. Defendants, for their part, argue that the limitations period began to run on February 14, 2006, when the documents at issue were produced to Haley.

---

[3] The court notes that Gloria's statement is merely duplicative of what Gloria testified to at trial.  On cross-examination, Gloria acknowledged that she had told the grand jury that she had not seen Haley on July 10, 1971, until he entered her house at 5:00 am.  See Commonwealth v. Haley, No. SUCR1971-58947, Memorandum on Defendant's Motion to Dismiss Indictment, at 7 (Mass. Super. Aug. 26, 2008).

[4] Haley has moved for leave to amend the Complaint to comply with the pleading requirements set forth in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), in the event that the court should find that he has failed to assert sufficient facts to state a claim under Monell. Haley proposes to include allegations that the Suffolk County District Attorney's Office "routinely" had "difficulty" with Boston police detectives who did not turn over exculpatory or impeachment evidence.  Reply at 10.  However, because the evidence withheld was not material and therefore did not result in a constitutional violation, any such amendment would be futile.  Therefore, the request to amend the Complaint will be DENIED.  See Foman v. Davis, 371 U.S. 178, 182 (1962).

The court finds that Haley's claims for negligent investigation, negligent training and supervision, and conspiracy, all accrued on February 14, 2006, when Haley was placed on notice of the alleged wrongs against him. See Mitchell v. City of Boston, 130 F. Supp. 2d 201, 214 (D. Mass. 2001).  None of these claims require that Haley show a termination of criminal proceedings in his favor. The analysis of Haley's claim for malicious prosecution, however, is somewhat different.  A claim for malicious prosecution requires Haley to show that "criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor."  Meehan v. Town of Plymouth, 167 F.3d 85, 88-89 (1st Cir. 1999).  Here, because the criminal proceedings against Haley were not terminated in his favor until August 26, 2008, he arguably has until August 26, 2010, to make proper presentment.

Whether the argument has any force, however, is a matter that the state court is best able to resolve, as there is a genuine doubt as to whether a Massachusetts court would conclude that the prosecution in this case was in fact terminated in Haley's favor without a valid finding of probable cause. See Broussard v. Great Atl. & Pac. Tea Co., 324 Mass. 323, 326 (1949) (under Massachusetts law, a conviction, even one later reversed on appeal, conclusively establishes probable cause unless it "was obtained solely by false testimony of the defendant [charged with malicious prosecution] or is impeached on the ground of fraud, conspiracy or subornation in its procurement.")  (internal quotation marks and citation omitted).  On this issue, the court will defer to the state court, as the Supreme Court counsels.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to

exercise jurisdiction over the remaining state-law claims." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).

<u>ORDER</u>

For the foregoing reasons, Haley's motion to amend or alter the judgment and for leave to file an Amended Complaint is <u>ALLOWED</u> in part and <u>DENIED</u> in part. The motion is allowed only to the extent that the court will alter the judgment to reflect that the court declines jurisdiction over the remaining state-law malicious prosecution claim. This claim is <u>DISMISSED</u> without prejudice. In all other respects, Haley's motion is <u>DENIED</u>. Defendants' motion to strike the allegations of the proposed Amended Complaint is <u>DENIED</u> as moot.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE