UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES HALEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:2009 CV 10197 |
| vs. ) | |
| ) | |
| CITY OF BOSTON, Former Boston Police ) | |
| Officer, JOSEPH KELLEY, Former Boston Police ) | JUDGE STEARNS |
| Officer, JOHN HARRINGTON, and as-of-yet ) | |
| UNKNOWN EMPLOYEES OF THE CITY OF ) | |
| BOSTON, ) | |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |

## MOTION TO COMPEL

NOW COMES Plaintiff, JAMES HALEY, by and through his attorneys, LOEVY & LOEVY, and hereby moves to compel the Defendant City of Boston to respond to certain discovery:

### Introduction

James Haley spent 34 years in prison for a crime that he did not commit. Dckt No. 1, Compl. ¶ 1. Arrested in 1971 at age 24, Mr. Haley was wrongfully convicted and sentenced to life in prison. *Id*. His conviction was vacated after he learned about police statements given by the State's two key witnesses that undermined both the witnesses' testimony and the State's entire theory of the case. *Id.* ¶¶ 2, 3.

Following his release from prison and the dismissal of the indictment against him, Mr. Haley brought this action seeking redress for his injuries. Among the claims that he raised was that the City of Boston had a policy and/or practice of deliberately suppressing material exculpatory and/or impeachment evidence, just as occurred with the two police statements in his

case.  This *Monell* claim is particularly important because both of the individual defendants in this action have passed away.

To prove his *Monell* claim, Mr. Haley served discovery on the City of Boston.  While Plaintiff recognizes that litigating a case involving a police investigation in the 1970s presents some challenges, the City has failed to answer the most basic discovery necessary for Plaintiff to pursue his claim.  Indeed, the City has refused to provide Plaintiff with identifying information for persons who might have knowledge about the Boston Police Department's ("Department") policies in the 1970s.  Nor has the City responded to Plaintiff's interrogatory asking how its policies and practices have changed since 1971 and 1972 despite only producing for Plaintiff documents regarding policies that post-date 1972.  Because the requested discovery is patently within Fed. R. Civ. P. ("Rule") 26's aegis, this Court should compel the City to answer it.

## Argument

### A.    Standard

Rule 26(b)(1) authorizes discovery of relevant information that "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  "Relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."  *McCarron v. J.P. Morgan Sec., Inc.*, No. 07-10786-RGS, 2008 WL 2066950, at *2 (D. Mass. May 14, 2008) (quoting *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984).  Each of the discovery requests at issue here easily satisfies Rule 26's threshold.

**B.     Identity of Witnesses**

In his discovery requests to the City, Plaintiff sought information about the identities of any persons who might have knowledge about Plaintiff's claims or the City's defenses.  In particular, because this case involves a police investigation that occurred 40 years ago, and because the City has failed to produce any documents reflecting the City's policies and practices in 1971 and 1972 or the identities of any witnesses who can speak to those policies and practices, Plaintiff requested the roster of police officers for the City of Boston for 1971 and 1972.  While the City has agreed to produce to Plaintiff the names of the individual officers on those rosters, it will not produce any attendant identifying information.  As a result, Plaintiff is essentially foreclosed from contacting those officers to determine whether they have knowledge relevant to the instant action; that is, whether they have knowledge of the City's policies and practices in 1971 and 1972 relating to the disclosure of evidence.  *See* Group Exhibit C, Letter from Horn to Counsel dated May 7, 2012.

The City's sole objection to producing identifying information is that it is confidential. *See id.*, Letter from Horn to Counsel dated April 17, 2012.  But the confidentiality of officer's identifying information does not foreclose the City from producing it subject to an appropriate protective order.

It is undisputed that the names of public employees are public information.  *See*, *e.g.*, M.G.L. c. 66 § 10.  While the officers' home addresses and dates of birth may not be public, Plaintiff offered to keep that (or any similar) specific identifying information confidential pursuant to an Attorney's Eyes Only protective order.  *See* Group Exhibit C, Letter from Horn to Counsel dated April 17, 2012.  Such a protective order should accommodate any privacy concerns that the Department has with regard to the officers' identifying information while

simultaneously affording Plaintiff necessary discovery. *See*, *e.g.*, *Giorgi v. Doody*, 537 F. Supp. 1251, 1254 (D. Mass. 1982) ("The protection of the privacy of the applicants for unemployment compensation benefits is an important societal interest.  That interest must be balanced, however, against the need for this information in order to insure that complete and just relief is granted in this case.  Weighing those two competing interests and keeping in mind my ability to issue protective orders which will adequately prevent unwarranted disclosure, I find that the balance tips in favor of allowing the disclosure sought by the plaintiffs."); *Moses v. Mele*, No. 10-CV-253-PB, 2011 WL 2174029, at *9 (D.N.H. June 1, 2011) (finding that "the public interest in access to records is outweighed, at this time, by Mele's interest in privacy in the personnel, employment, and internal investigation records," but providing that disclosure should be subject to an appropriate protective order).  Indeed, the balance between privacy and discovery here swings heavily in Plaintiff's favor:  Plaintiff needs identifying information about the former officers to determine whether any of these officers are still alive and if so, whether they have any recollection of any training, policies or practices of the Department in the early 1970s. *See*, *e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Young v. City of Providence*, 404 F.3d 4 (1st Cir. 2005).  Without this information, Plaintiff will be left with only the City's identification of relevant witnesses, which to date amounts to one by name – a current detective who reviewed the Haley investigative file and appears to have no particular knowledge of the Department's policies and practices in 1971 and 1972 – and others who have not been individually (or otherwise) identified but rather only categorized as "various BPD Police Personnel from 1971-1972 criminal investigation and trial."  *See* Exhibit B, City's Response to Interrogatory No. 2.  None of these witnesses can provide any insight into the City's policies and practices in 1971 and 1972.  As such, given the importance of the potential retired-officer witnesses and the ability

to accommodate any privacy concerns, Plaintiff respectfully requests that the City be compelled to disclose the roster of police officers employed by the Boston Police Department in 1971 and 1972.

**C.    Changes in Policy**

In addition, the City has refused to respond to Plaintiff's interrogatory asking about whether and if so, in what way, the City's policies and practices with regard to the deliberate suppression of material and/or exculpatory evidence have changed since 1971 and 1972. *See* Exhibit A, Plaintiff's Interrogatory No. 17.  That interrogatory is particularly important because the City has stated that it cannot locate any policies from 1971 and 1972.  Instead, the City has largely provided Plaintiff with City documents that post-date 1972, including materials from 1975-76 and 1979.  In order to properly assess and utilize those materials in this litigation Plaintiff needs to know whether the City's policies and training materials changed from 1971/1972 to 1975-76 or 1979, and thereby whether he can reasonably rely on the later material as representative of the City's policies earlier in the decade.  Indeed, without such information, training materials and other Department rules and regulations that post-date 1972 are not probative of the underlying issue.

None of the City's objections to providing that basic information hold weight.  According to the City, Interrogatory No. 17 is "overly broad, beyond the scope of discovery . . . and not designed to elicit admissible evidence."  Exhibit B, City's Resp. to Interrogatory No. 17.  But in light of the discovery that the City has been able to cull and produce to Plaintiff – all of which post-dates the criminal investigation involving Mr. Haley – Plaintiff's request for information regarding how the policies have changed is directly relevant to the this case and designed to produce admissible evidence.  *See*, *e.g.*, *Rowland v. Mad River Local School Dist.*, 470 U.S.

1009, 1018 n.13 (1985) ("'[a]s in any lawsuit,' a . . . plaintiff 'may prove his case by direct or circumstantial evidence.'") (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983)).  Notably, the City did not say that it could not answer this interrogatory because it does not know how the City's policies have changed, or what the City's policies were in 1971 and 1972.  To the contrary, the City has answered a number of Requests for Admission and other Interrogatories relating to the Department's policies and practices regarding the disclosure of evidence in 1971 and 1972.  *See*, *e.g.*, Exhibit D, City's Resp. to Plaintiff's First Set of Requests for Admission; *id.* at Nos. 1-10 (Defendant Kelley's obligation to disclose the police statements); Nos. 11-12, 15 (City's policy and practice with regard to exculpatory evidence); Exhibit B, City's Resp. to Interrogatory No. 7 (City stated that the individual Defendants did not act inconsistently with the City's policies and practices).  Therefore, the City should be compelled to answer Plaintiff's Interrogatory No. 17.

### D.     L.R. 37.1 Compliance

Before filing this motion, counsel for the Plaintiff consulted with the counsel for the Defendants during a telephonic discovery conference on April 17, 2012.  *See* Group Exhibit C, Letter from Horn to Counsel dated April 17, 2012; Letter from Horn to Counsel dated April 11, 2012; Letter from Horn to Counsel dated March 26, 2012.  Following that conference, defense counsel agreed to produce to Plaintiff some Department materials from the 1970s.  Defense counsel also agreed to supplement their response to Plaintiff's Interrogatory Nos.1 and 2, which sought the identities of persons who assisted the Defendants in responding to Plaintiff's discovery requests or who have knowledge of facts relevant to the claims or defenses in this action.  Plaintiff is still waiting for the City to update its Interrogatory responses.

In addition, the Defendants have refused to provide Plaintiff with identifying information regarding Boston police officers for the years 1971 and 1972 and a response to Interrogatory No. 17. As a result, Plaintiff had no choice but to bring this action. *See* Group Exhibit C, Letter from Horn to Counsel dated April 27, 2012.

**Conclusion**

For all of the reasons stated above, Plaintiff respectfully requests that this Court compel the City to (1) provide Plaintiff with identifying information for the 1971 and 1972 roster of police officers employed by the Boston Police Department; and (2) respond to Interrogatory No. 17.

WHEREFORE, Plaintiff respectfully requests that this Court compel the City of Boston to produce the roster of Boston Police Officers active in 1971 and 1972 including identifying information for police officers subject to an Attorney's Eyes Only confidentiality agreement and a response to Interrogatory No. 17.

Respectfully Submitted,

/s/ Gayle Horn

Jon Loevy
Gayle Horn
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, IL 60607

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 7, 2012.

/s/ Gayle Horn