UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES A. HALEY,<br>    Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, Former Boston Police Sergeant Detective JOSEPH KELLEY, and Former Boston Police Detective JOHN B. HARRINGTON, as well as yet UNKNOWN EMPLOYEES OF THE CITY OF BOSTON,<br>    Defendants. | No.: 1:2009cv10197-RGS |

## REPLY OF DEFENDANTS CITY OF BOSTON, FORMER BOSTON POLICE SERGEANT DETECTIVE JOSEPH KELLEY, FORMER BOSTON POLICE DETECTIVE JOHN B. HARRINGTON, AND UNNAMED EMPLOYES OF THE CITY OF BOSTON TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants, City of Boston ("City"), former Boston Police Sergeant Detective Joseph Kelley ("Detective Kelley"), former Boston Police Detective John B. Harrington ("Detective Harrington")[1], and unknown employees of the City of Boston (all hereinafter collectively known as "Defendants") submit this reply to the Plaintiff's Opposition to the Defendants' Motion for Summary Judgment.[2]

---

[1] Individual Defendants Joseph Kelley and John B. Harrington were deceased prior to the filing of the instant action. Their estates have never been served with process in this matter. Lack of timely service was raised as a defense within the Defendants' Motion to Dismiss [ECF docket #9]; however it was not addressed within the Court's Memoranda and Orders on the motion [ECF dockets # 26 and 34], because this court dismissed the claims against the individual Defendants on separate grounds. Joseph Kelley and John B. Harrington have not filed answers in this matter. As set forth in the Defendants' motion for summary judgment, their estates are closed and are not subject to liability. Although this reply addresses the substantive claims against them, neither Kelley nor Harrington nor their respective former estates are proper parties to this action. As of the date of this filing, the Plaintiff has taken no action to identify the alleged John Doe defendants.

[2] Although James Haley is deceased and the administratrix of his estate is the Plaintiff in this matter, for the sake of simplicity, Mr. Haley is referred to in this memorandum as the Plaintiff.

**I.** **The opinion testimony of Thomas Dwyer, which is admittedly Plaintiff's only evidence in support of his <u>Mooney</u> claim, is not admissible and does not demonstrate that the Prosecutor did not receive the witness statements, let alone that the Defendants engaged in deliberate deception by purposefully concealing them.**

The Court of Appeals granted qualified immunity to the individual Defendants on Plaintiff's <u>Brady</u> claim, <u>Haley</u>, 657 F.3d at 47; however it did not dismiss Plaintiff's "deliberate suppression" claim, which "draws sustenance from a line of cases flowing from the Supreme Court's seminal decision in <u>Mooney v. Holohan</u>, which held that state actors violate an accused's due process rights when they engage in 'deliberate deception.'" <u>Haley</u>, 657 F.3d at 48; <u>Mooney v. Holohan</u>, 294 U.S. 103, 112 (1935). In order to avoid summary judgment on all counts asserted within his complaint, the Plaintiff must identify admissible evidence which demonstrates that the individual Defendants committed a "deliberate concealment of material evidence" from the prosecuting attorney "designed to grease the skids for false testimony and encourage wrongful conviction." <u>Haley v. City of Boston</u>, 657 F.3d 39, 49-50 (1st Cir. 2011). As the Plaintiff's opposition to summary judgment makes crystal clear, the *only* evidence that Plaintiff offers to demonstrate that the witness statements at issue were concealed from to the prosecutor is the testimony of Thomas Dwyer regarding the good character and general practices of the prosecuting attorney Muldoon. This evidence is not admissible and does not create a triable issue as to whether the statements were deliberately concealed.

Plaintiff offers testimony by Thomas Dwyer that ADA Muldoon was an ethical prosecutor and of high moral character in order to demonstrate that if Muldoon had

received the statements, he would have disclosed them to Plaintiff's defense counsel.[3] See Plaintiff's Opposition to Summary Judgment ("Opposition") at page 17; Plaintiffs L.R. 56.1 Statement of Additional Facts ("PSOF") at ¶ 35. Thomas Dwyer, who joined the Suffolk County District Attorney's Office after Plaintiff's conviction, testified at length regarding his respect for ADA Muldoon and Muldoon's character and reputation. PSOF at ¶ 55. Dwyer refers to ADA Muldoon as a "class act" and states that "Mr. Muldoon had an impeccable reputation for honesty and adhering to all of the ethical and legal requirements for prosecuting cases." PSOF at ¶ 55. Drawing on his knowledge of Muldoon's character, Dwyer opines that "the notion that [Muldoon] would have gotten a report with exculpatory evidence with the police department and hid it in his own pocket, could not have happened in my judgment." PSOF ¶ 55; Opposition at p. 18.

The Defendants do not dispute Muldoon's reputation and character as a prosecutor. However, character evidence is simply not admissible to demonstrate that if Muldoon had been provided with the witness statements, that he would have produced them to defense counsel. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Dwyer's testimony regarding ADA Muldoon's good character as an ethical prosecutor is therefore inadmissible, and cannot

---

[3] This theory is based on the assumptions that since the statements were not used by defense counsel Ferese at trial, Ferese must not have been aware of their existence and that ADA Muldoon would have understood that he was required to provide the statements to defense counsel in light of existing 1972 law and the trial judge's evidenciary rulings. As addressed at length in Sections III(A)(i)-(iii) of the Defendant's Memorandum of Law in Support of Summary Judgment, there is no basis for either of these assumptions. For example, Dwyer testified that during his time as an ADA, the District Attorney's Office "policy in regards to the discoverability of witness statements" was "not to disclose them" and that the District Attorney's Office "did not have a consistent practice with respect to disclosure of exculpatory evidence." See Defendants' L.R. 561. Statement of Facts in Support of Their Motion for Summary Judgment ("SMF") at ¶ 66; Exhibit 1 at pp. 80, 89.

be considered to demonstrate that Muldoon would have provided the statements to defense counsel.

The only other possible avenue through which Plaintiff might seek admission of Dwyer's testimony is through Fed. R. Evid. 406, which allows for admission evidence of habit and routine practice. Dwyer states that based on his dealings with ADA Muldoon "in my personal experience, based on repeated dealings with and observations of Mr. Muldoon during the time period at issue," it was Muldoon's "standard practice" to provide exculpatory evidence to defense counsel. PSOF ¶ 55; Opposition at p. 17-18. This testimony is similarly inadmissible because it does not demonstrate a "habit" as contemplated by Fed. R. Evid. 406 and Dwyer admittedly had never met Muldoon until after Plaintiff's conviction.

Mr. Dwyer was in the Navy when Plaintiff was convicted. See <u>Deposition of Thomas Dwyer</u> at pp. 6, 10-11, 70, attached as **Exhibit 1**. He was not hired by the District Attorney's Office until after Plaintiff's conviction and as of the time of Plaintiff's trial, he had never met ADA Muldoon and knew nothing about Muldoon or his practices. <u>Id</u>. Counsel is unable to locate a single case where admissible habit evidence is based entirely on observations made of behavior that occurred after act in question. However, even if Dwyer had knowledge of ADA Muldoon's practices prior to the Plaintiff's criminal trial, which he did not, there is no evidence to suggest that Muldoon's handling of witness statements was so automatic, consistent and reflexive that it constitutes habit evidence under Fed. R. Evid. 406.

"Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in

accordance with the habit or routine practice." Fed. R. Evid. 406. "The very nature of habit evidence is that it is done reflexively." U.S. v. Oldbear, 568 F.3d 814, 822 (10th Cir 2009). ) "[H]abit suggests a regular response to a repeated specific situation that has become semi-automatic." U.S. v. Heard, 709 F.3d 413, 434 (5th Cir. 2013). "A habit is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or giving the hand signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic." Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1524 (11th Cir.1985), quoting Fed. R. Evid. 406 advisory committee notes; U.S. v. Newman, 982 F.2d 665, 668 (1st Cir 1992); McCormick on Evidence, § 195 at 826.

The admission of habit evidence depends on the "degree of regularity of the practice and its coincidence with the occasion." Loughan, 749 F.2d at 1524, quoting McCormick on Evidence, § 195 n. 16. "Adequacy of sampling and uniformity of response are controlling considerations." Id. at 1519. "The requisite regularity is tested by the ratio of reaction to situations." U.S. v. Newman, 982 F.2d 665, 668 (1st Cir 1992), citing Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 512 (4th Cir.1977). "It is essential, therefore, that the regularity of the conduct alleged to be habitual rest on an analysis of instances 'numerous enough to [support] an inference of systematic conduct' and to establish 'one's regular response to a repeated specific situation.'" Newman, 982 F.2d at 668, quoting Fed. R. Evid. 406, advisory committee's notes. "It is only when examples offered to establish [a] pattern of conduct or habit of party are numerous enough to base inference of systematic conduct and to establish one's regular response to

5

a repeated specific situation … that examples are admissible to establish pattern or habit." Wilson, 561 F.2d at 494. "[H]abit or pattern of conduct is never to be lightly established, and evidence of example, for purpose of establishing such habit, is to be carefully scrutinized before admission." Id.

Dwyer's testimony that it was Muldoon's practice to disclose exculpatory evidence to defense counsel does not establish a habit for purposes of Fed. R. Evid. 406. Dwyer has no knowledge of Muldoon's practices at the time of Plaintiff's criminal trial. Further Dwyer does not establish that Muldoon had a reflexive or semi-automatic response to receiving exculpatory evidence from police. The review and handling of exculpatory evidence is an intellectual exercise, not a reflexive, semi-automatic response to stimuli. Dwyer's testimony regarding Muldoon's practices is essentially character evidence in disguise.

Also, Dwyer's testimony identifies no actual representative instances and provides no foundation for assessing the adequacy of the sampling to which he would testify. There is no evidence approximating the number of times Dwyer observed Muldoon receive exculpatory evidence or produce this evidence or how these numbers might compare to the total number of cases involving exculpatory that Muldoon handled. Habit evidence cannot be evaluated absent evidence of the number of instances in which the alleged habitual behavior occurred compared to the number of unobserved similar instances. Newman, 982 F.2d at 668. Therefore, even if Dwyer had knowledge regarding Muldoon's practices at the time of the trial and Muldoon's handling of exculpatory evidence constituted a reflexive or semi-automatic response, Dwyer's testimony "falls far short of the adequacy of sampling and uniformity of response which

6

are the controlling considerations governing admissibility" Id., quoting G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir.1985).

Thomas Dwyer's statements are the sole thread on which Plaintiff hangs his claim of deliberate concealment. These statements are not admissible and do not create a triable issue as to whether the individual Defendants deliberately concealed the statements from the prosecutor. Additionally, the Plaintiff fails to address the fact that even if he could demonstrate that ADA Muldoon did not receive the statements, he has produced absolutely no evidence whatsoever to show that this was because the individual Defendant's deliberately and maliciously concealed them. As made clear by the Court of Appeals, a showing that the individual Defendants did not provide the statements to the prosecutor, in and of itself, does not raise a constitutional claim. By its terms, Brady and its no-fault disclosure requirement applied only to prosecutors. Haley, 657 F.3d at 48, citing Brady 373 U.S. at 87-88. Plaintiff must provide evidence to demonstrate not only that the statements did not reach the prosecutor but also that the Defendants engaged in deliberate deception by purposefully concealing material evidence in order to encourage wrongful conviction. Haley, 657 F.3d at 48-50 Mooney v. Holohan, 294 U.S. 103, 112 (1935). The Plaintiff has not even identified any evidence that would support this necessary aspect of his claims. Therefore, Plaintiff's due process action cannot proceed and the Defendants are entitled to summary judgment on all counts.

II. **Plaintiff's contention that the Court of Appeals decision addressing the Defendant's motion to dismiss conclusively establishes the materiality of the witness statements is misplaced; this issue is ripe and must be considered in light of the summary judgment record not the facts alleged in Plaintiff's complaint.**

In order to succeed on any of his claims, the Plaintiff must demonstrate that the allegedly withheld witness statements were material. See United States v. Bagley, 473 U.S. 667, 678 (1985). The Plaintiff argues that this court may not evaluate the materiality of the statements at the summary judgment stage because the Court of Appeals already conclusively held the statements to be material. To this effect, the Plaintiff's opposition states, "[i]n analyzing Haley's claim, the First Circuit necessarily concluded that the suppression of the sisters' witness statements, if proven, rises to the level of a Constitutional violation. (explaining that the "prosecution's case rested largely on the sisters' testimony," and the Defendant detectives "were aware that the prosecution's theory relied heavily on Haley's supposed sighting of the sisters on the day before the murder.")." Opposition at p. 10. In his Opposition, the plaintiff omits the key qualifying language at the beginning of the Court's quote. What the Court of Appeals actually stated was, *"[c]rediting the complaint's allegations and taking all reasonable inferences therefrom in Haley's favor (as we must*), the detectives investigated the murder and took the sisters' statements. They knew that the prosecution's case rested largely on the sisters' testimony — and they were aware that the prosecution's theory relied heavily on Haley's supposed sighting of the sisters on the day before the murder." Plaintiff's complaint alleges at length that the statements were material and exculpatory and indeed, that if the statements had been disclosed, "the prosecution of Plaintiff could not and would not have been pursued." See Plaintiff's Complaint at ¶¶ 25-29, 45.

8

The Court of Appeals, in response to the Defendant's Rule 12 motion to dismiss, addressed whether the required element of materiality had been plausibly plead, crediting as true all of the contested allegations contained in Plaintiff's complaint, and determined that it had. Of course at the summary judgment stage, this court need not credit all of the allegations contained in the complaint. Rather, Plaintiff must demonstrate through evidence elicited within the summary judgment record, that there exists a triable issue as to the materiality of the statements, i.e. whether a reasonable probability exists that, had the evidence been disclosed to defense counsel, the result of Plaintiff's trial would have been different. See Bagley, 473 U.S. at 678. The issue of whether the statements are material in light of the factual record at summary judgment was clearly not reached or resolved by the Court of Appeals decision on the Defendants' motion to dismiss. This issue is ripe for this court to decide.

**III.     The additional evidence identified within Plaintiff's Opposition in support of his Monell claim does not support his necessary showing of a widespread, well-settled custom or practice of police officers deliberately concealing material evidence.**

Plaintiff's Opposition does nothing to remedy Plaintiff's inability to make the necessary showing of a widespread, well-settled custom or practice of police officers deliberately concealing material exculpatory evidence from prosecutors which pre-existed and was the moving force behind the Plaintiff's alleged constitutional deprivation. In his Opposition, Plaintiff identifies two alleged sources of evidence for his claim of a municipal custom that were not addressed within the Defendant's motion for summary judgment: the judicial opinion in Commonwealth v. Adams and the testimony of Thomas Dwyer. Neither establishes or even supports Plaintiff's necessary showing.

9

Laurence Adams was arrested by the Boston Police Department and prosecuted by the Suffolk County District Attorney's Office and convicted of murder in 1974. Comm. v. Adams, No. 74-653, 2004 WL 1588108 (Mass. Super. May 20, 2004). In 2004, the Massachusetts Superior Court granted Adams's motion for a new trial, based in on its findings that Adams's trial counsel had not received multiple sources of information including probable cause hearing testimony, grand jury witness statements, CORI information of witnesses, transcribed witness statements and police reports. Id. at *5-6. Plaintiff alleges as an undisputed fact that "the police" withheld witness statements from Adam's counsel, but offers no evidence to support this claim. PSOF at ¶ 103. Although the motion judge found that Adams's counsel had not received witness statements before trial, he made no finding that that police had withheld anything or even whether these statements had been disclosed by police to the prosecutor. Adams, 2004 WL 1588108 at *6-7.

Further, Adams's trial and conviction occurred in 1974, two years after Plaintiff's conviction. Even if Plaintiff had produced evidence of an unconstitutional withholding by Boston police during the Adams prosecution, this could not have contributed to any alleged well-settled, widespread practice of unconstitutional withholding that served as the moving force behind Plaintiff's deprivation of rights. See Connick v. Thompson, 131 S.Ct. 1350, 1364 (2011) (pattern of contemporaneous or subsequent conduct cannot serve as moving force). Similarly, the Adams conviction could not have placed municipal policy makers on notice that police training regarding disclosure of evidence to prosecutors was allegedly inadequate. There is no evidence that any policymaker would

10

have been aware of any alleged withholding in the Adams case until the issue was raised by Adams's counsel in approximately 2002.

The testimony of Thomas Dwyer does even less to support Plaintiff's Monell claim. In his affidavit, Dwyer writes, "[f]rom time to time, during my tenure as an Assistant District Attorney in Suffolk County, the District Attorney's' Office experienced some problems with Boston police detectives who were less sensitive than they should have been to the constitutional due process rights of criminal defendants. This included the detectives failing to turn over exculpatory evidence, including impeachment evidence." PSOF at ¶ 99. The very language of this quote, which suggests that during his six years as an assistant district attorney, Dwyer "from time to time" became aware of police officers failing to turn over exculpatory evidence, is facially inconsistent with the existence of a widespread pattern of police withholding evidence that was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).

Additionally, as discussed above, Dwyer did not join the District Attorney's Office until after the Plaintiff's conviction and therefore cannot speak to any relevant custom or practice which could have served as the moving force behind Plaintiff's alleged subsequent deprivation of rights. The only testimony given by Dwyer regarding an alleged custom or practice that existed prior to Plaintiff's conviction is the following:

> "[T]here was a natural reluctance coming from the old days of doing anything -- putting anything in a report that could hurt your case period. That's the way it was. And I know from the game that's the way it was in the 50's, the 60's and that's the way it was in the 70's too is the natural reluctance from the Boston Police to put everything into a report, particularly exculpatory. So in my case, I handled it. I knew what to do

11

and I handled it and I didn't have the problem or at least as far as I know I didn't have a problem."[4]  Exhibit 1 at pp. 96-97; PSOF at ¶ 99.

Dwyer's testimony regarding a "natural reluctance" of Boston police in the 1950's into the 1970's to document exculpatory information within their reports does nothing to establish the existence of a practice of police deliberately concealing existing witness statements from prosecutors, let alone a custom that is "so well-settled and widespread that policymaking officials of the municipality can be said to have actual or constructive knowledge of the practice yet did nothing to end it."  Walden v. City of Providence, R.I., 596 F.3d 38, 57-58 (1st Cir. 2010).  Indeed, when asked if there was a widespread practice within the Boston Police Department of affirmatively disclosing exculpatory evidence to the District Attorney's Office when he joined the Office in 1972, Dwyer testified that there was such a practice.

> Q: [I]in 1972 in your -- from your knowledge, did the police department have a practice of disclosing exculpatory evidence to the D.A.'s Office?
> A. I would --
> Q. And by practice, I mean an official practice that's so widespread as to constitute an official practice?
> A. I think there was -- I think there was a practice.  I don't know what official practice means. But there was a practice. But again, a lot depended upon what police officers you were dealing with.  Exhibit 1 at pp. 118-19.

Plaintiff has failed to produce evidence to support his necessary showing of an unconstitutional municipal custom or practice, therefore his Monell claim must be dismissed.

---

[4] It appears clear that Dwyer's statement that he knows "from the game" what police tendencies were during the two decades prior to when he joined the District Attorney's Office is based on inadmissible hearsay.

RESPECTFULLY SUBMITTED,

**Defendants,
THE CITY OF BOSTON,
JOSEPH KELLEY, and
JOHN B. HARRINGTON,**

By their attorneys,

/s/ Hugh R. Curran
Hugh R. Curran, BBO# 552623
hcurran@bletzerlaw.com
Bletzer & Bletzer, P.C.
300 Market Street
Brighton, MA 02135
(617) 254-8900

/s/ Evan C. Ouellette
Evan C. Ouellette, BBO# 665943
Brody, Hardoon, Perkins &Kesten, LLP
One Exeter Plaza, 12th Floor
Boston, MA 02116
(617) 880-7100
eouellette@bhpklaw.com

DATED: August 27, 2013

**CERTIFICATE OF SERVICE**

I, Evan C. Ouellette, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 27, 2013.

/s/ *Evan C. Ouellette*
Evan C. Ouellette